## HELEN M. VERZI *v.* GLENN J. GOLDBURN, PERSONAL REPRESENTATIVE OF THE ESTATE OF OLGA M. MACMILLAN

[No. 693, September Term, 1974.]

*Decided May 29, 1975.*

410

The cause was argued before THOMPSON and LOWE, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Morton J. Frome*, with whom were *Katz & Frome, P.A.* on the brief, for appellant.

*A. J. D. Schmidt* for appellee.

SWEENEY, J., delivered the opinion of the Court.

In this case we are concerned with a dispute over certain monies contained in two joint tenancy bank accounts in the Riggs National Bank of Washington, D. C.

On March 15, 1965, Olga M. MacMillan and her daughter, Helen M. Verzi, the Appellant herein, opened a joint checking account at the Riggs National Bank and a week later, on March 22nd, they opened a joint savings account at that same institution. In each case both women signed an agreement provided by the bank which stated that "all sums now on deposit or hereafter deposited in our account with the said bank, shall be owned by us jointly with the right of survivorship and not as tenants in common."

Mrs. MacMillan died on May 1, 1972. After her death, her personal representative, Glenn J. Goldburn, filed a petition to have the funds in the two joint accounts declared part of the decedent's estate. Mrs. Verzi resisted that petition, claiming the money as her own, and in due course the matter came on before the Circuit Court for Montgomery

County, sitting as a court of equity, with the Honorable Plummer M. Shearin presiding. Judge Shearin found in favor of the personal representative, and from that judgment Mrs. Verzi has taken this appeal.

Because the accounts were opened in a banking institution located in the District of Columbia, all parties in interest agree that the question of the ownership of the disputed funds must be decided according to the substantive law of the District of Columbia.

In addition to the Appellant, the decedent was survived by a son, John MacMillan, and those siblings were Mrs. MacMillan's only heirs. It appears that Mrs. MacMillan was the owner of a substantial apartment complex and was actively engaged in the management of that business, with some assistance from her son. At some time prior to the day on which the first of these accounts was opened, Mrs. MacMillan had suffered a heart attack and evidently became apprehensive about her continuing ability to manage her business enterprise. It is undisputed that one of the reasons which led her to open the joint accounts was her desire to have her daughter assist her in the management of her business properties.

With the passage of time, Mrs. MacMillan became increasingly ill, and at some time in the year 1970 she abandoned her own residence in Montgomery County and went to live with the Appellant in a residence purchased specifically for that purpose, and towards the purchase price of which Mrs. MacMillan made a contribution in excess of $15,000.00. At least some of the balance of the purchase price was financed by two deeds of trust, and there is evidence in the record that monthly payments on one of the trust accounts were made by Mrs. MacMillan. The record also clearly shows that at no time during the period from which the accounts were opened until Mrs. MacMillan's death did Mrs. Verzi draw on the funds in either account for her own purposes, although there were numerous occasions on which she signed checks in connection with her mother's business enterprises, or for payment of nursing or other personal expenses for her mother.

For several years immediately prior to her death, the decedent, having suffered a stroke, was in need of intensive nursing care. For some period of time after her stroke, she was served by nurses on a 24 hour a day basis, but eventually the nursing duties were performed by one nurse, who worked 32 hours a week during the daytime hours, with Mrs. Verzi supplying such other nursing care as might be required at all other times. It is conceded that Mrs. Verzi received no compensation from her mother, either for assistance to Mrs. MacMillan in conducting her business affairs, or for her nursing services, with the exception of the trust payments to which reference is made hereinabove.

It is the position of the Appellee, the personal representative, that the accounts at Riggs were opened by the decedent for her own convenience, and that they were never intended by her to be for the benefit of the Appellant. Mrs. Verzi, on the other hand, contends that her mother, with full knowledge of the consequences, opened the accounts with the intention that any balance in them at the time of her death be paid over to and become the property of Mrs. Verzi.

The Appellee, in support of his position, offers very little evidence. The Appellant, in support of her claim to the monies, presents a far more compelling case and we believe that under the facts of this case and under what we deem to be the controlling law, the court below erred in finding for the Appellee. Although it is, of course, true that the law of the place of deposit should control, *Imirie v. Imirie,* 246 F. 2d 652 (D.C. Cir. 1957); *Seng v. Corns,* 58 So. 2d 686 (Fla. 1952); *Barstow v. Tetlow,* 97 A. 829 (Me. 1916); *In re Damato,* 206 A. 2d 171 (N.J. Super. Ct., App. Div. 1965); *Wyatt v. Fulrath,* 239 N.Y.S.2d 486 (Sup. Ct. 1963); see Annot. 25 A.L.R.2d 1240 (1952) and 10 Am.Jur.2d Banks [Sec.] 376 (1963), it is our duty to interpret the laws of the District of Columbia in this case in the same manner as that law has been interpreted by the Court of Appeals of Maryland. In *Tyler v. Suburban Trust Co.,* 247 Md. 461, 231 A. 2d 678 (1967), the Court of Appeals construed the law of the District of Columbia in a case of great similarity and said, at 470:

"[I]n applying the law of the District of Columbia . . . . we believe that the core of the matter with regard to joint accounts with right of survivorship is whether sufficient evidence exists to prove the intent on the part of the donor of the joint bank account to establish survivorship to the account in the donee. *Horowitz v. Fainberg*, 374 F. 2d 336 (D.C. Cir. 1967); *Donoughe v. Morgan*, 298 F. 2d 329 (D.C. Cir. 1962); *Imirie v. Imirie, supra; Matthew v. Moncrief*, 135 F. 2d 645 (D.C. Cir. 1943).

"If the intention of the donor of the joint account to create the right of survivorship is clear, it is our belief that the courts of the District of Columbia will effect the implementation of such an intent, unless by so doing a violation of public policy results."

and again at 472, the Court said:

"[I]n the cases of *Horowitz v. Fainberg, supra,* and *Donoughe v. Morgan, supra,* there was no effort made to correct the impression that the intent to create the survivorship is the important factor in such cases, and indeed if anything, we must assume that *Horowitz* and *Donoughe* hold that where the facts show that the joint and survivorship account expressly provides for survivorship, *that this intent will prevail unless evidence to the contrary is produced.*" (Emphasis supplied).

In the instant case, as in *Tyler*, there is no evidence of fraud or coercion. The accounts in question were opened more than seven years before the death of the decedent, and there is no evidence that the accounts were established either to thwart the laws governing testamentary dispositions or to circumvent creditors; nor was there any other indication of an actual or intended violation of public policy.

In the case at hand, again as in *Tyler*, the document signed by the decedent when opening the accounts clearly and

unequivocally stated that the monies then and thereafter contained in those accounts became the joint property of both persons named on the accounts, with the right of survivorship in the remaining party on the death of one party. The Appellant testified at the hearing before Judge Shearin as to the surrounding circumstances at the time and place the accounts were opened, and her testimony that the account cards were signed in the presence of officers of the bank and "they explained to her at that time about the right of survivorship, if she or I predeceased each other what would become of the accounts" was in no way contradicted.

It was the Appellant's further testimony that the decedent told her four or five years after the accounts were opened that the money accruing to Appellant from these accounts on decedent's death would be sufficient to pay off the first mortgage or trust on Appellant's dwelling house. It is true, of course, that the Appellant's testimony in this regard fully supported her own position in this case, and it was contradicted, at least in part, by her brother, but the value of that testimony is increased manyfold by the corroborating testimony of the decedent's nurse, who had no pecuniary axe to grind in this proceeding, and who was Appellee's own witness. The nurse, Mrs. Margaret Jones, worked intimately with the decedent for almost three years. She testified that at various times Mrs. MacMillan made mention to her of her account or accounts and said that there was $10,000.00 to be paid on the second trust at her death. Mrs. Jones' credibility is heightened by the fact that at several times during the course of her testimony she related that Mrs. MacMillan had expressed to her the belief that Mrs. Verzi "would be fair with John." This is of particular interest, we believe, because it is a strong indication to us that Mrs. MacMillan considered that at her death the funds in the accounts would be the property of Mrs. Verzi, and that being "fair" to her brother would be discretionary with Appellant. That belief, we believe, is totally inconsistent with the view that Mrs. MacMillan ever intended or thought that the balance in the accounts would be paid on her death to her estate, and thereby become in

equal part the property of her son and daughter, who were the beneficiaries under her will.

In finding for the Appellee, the judge below relied primarily on *Murray v. Gadsden,* 197 F. 2d 194 (1952), wherein the United States Court of Appeals for the District of Columbia Circuit held that the elements of a valid inter vivos gift were not present in a dispute over two bank accounts. We are at a loss to understand Judge Shearin's reliance on *Murray,* because that case had been considered by the Maryland Court of Appeals and found inapplicable to a set of facts similar to those now before us, in *Tyler v. Suburban Trust Co., supra.* In *Tyler* the Maryland Court found that the bank account in *Murray* was of a "testamentary character" and that the donee named had been added to that account in furtherance of an agreement between the donor and donee as to the disposition of the funds, in an attempt to circumvent the statutory right of the donor's husband to share in those funds. In *Tyler,* at 472, the Court of Appeals quoted from *Imirie v. Imirie, supra,* in which the United States Court of Appeals for the District of Columbia indicated that *Murray* was a decision rendered on the peculiar facts contained therein and restated the principle that "if the intent of the donor of the joint account to create a right of survivorship is clear, and no principle of public policy is violated by recognizing the right in the particular case, the right should be recognized."

We believe *Tyler* clearly sets out the law of the District of Columbia as decided by the courts in that jurisdiction, and we believe that we are bound to follow it in this case. It is uncontradicted in the record before us that the decedent opened the accounts by signing a document which made it clear that a right of survivorship was being vested in the Appellant, and it is also uncontradicted in this record that the meaning of that legal phrase was explained to the decedent by bank officers when she signed the document. The record further makes clear that the decedent, by various statements at various times in her life after the accounts were opened, indicated her full knowledge of the fact that the monies contained in these accounts would, on her death,

become the property of the Appellant. In applying these facts to *Tyler*, we see no basis on which the judge below could have concluded that it was not the decedent's intention to have the Appellant receive the proceeds of these accounts on decedent's death. We can find no requirement under District of Columbia law as set out in *Tyler* or elsewhere that the Appellant must have contributed funds to the accounts in question in order to be entitled to those funds on the decedent's death; but if such a requirement does exist, the record contains much to support the Appellant's argument that she had made a substantial contribution in kind, by her continued assistance to her mother in the management of the mother's business affairs, and her devoted personal nursing care to her mother throughout the closing years of her mother's life.

Finally, we believe that the burden in this case, under the appropriate District of Columbia cases and *Tyler*, was on the personal representative, who had the duty of producing evidence that the joint and survivorship accounts meant something other than what they said. The record before us is almost totally barren of any evidence to accomplish that purpose.

Maryland Rule 1086 provides:

> "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

In *Gosman v. Gosman*, 19 Md. App. 66, 309 A. 2d 34 (1973), we said at 78:

> "Under this Rule, facts explicitly or implicitly found by the lower court, either upon undisputed evidence or upon conflicting evidence after judging questions of weight and credibility, will be accepted on appeal unless the finding is clearly erroneous. However, conclusions of law based upon the facts

are reviewable in the appellate court for any error of law, *Space Aero v. Darling,* 238 Md. 93, 106, 208 A. 2d 699."

From our review of this record, we find that the holding of the trial judge that the decedent did not intend to make a gift to Appellant of the funds in these accounts was clearly erroneous, and we further find that the court below erred as a matter of law in failing to apply in this case the holding of the Court of Appeals in *Tyler v. Suburban Trust Co., supra.*

It is the opinion of this Court, therefore, that the lower court should be reversed and judgement entered for the Appellant.

> *Judgment reversed.*
>
> *Judgment entered in favor of appellant, appellee to pay the costs.*