75 A.3d 964

**Michael Robert O'BRIEN, Sr., et al.**

**v.**

**BANK OF AMERICA, N.A., et al.**

**No. 0824, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 9, 2013.

52

**54**

Albert McCarraher (Schlachman, Belsky & Weiner, PA, on the brief) Baltimore, MD, for appellant.

Steven M. Sullivan (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD. John D. Wilburn (McGuire Woods LLP, Tysons Corner, VA, Craig Haughton, McGuire Woods LLP, on the brief, Baltimore, MD), for appellee.

Panel: WRIGHT, HOTTEN and JAMES P. SALMON (Retired, Specially Assigned), JJ.

HOTTEN, J.

This case arises from a garnishment of bank accounts jointly held by a married couple, Dorothy O'Brien ("Dorothy") and appellant, Michael O'Brien ("Michael"), as well as another bank account held by Dorothy, Michael, and appellant, Lavelle O'Brien ("Lavelle"),[1] who is Michael's mother, to satisfy a judgment entered against Dorothy.[2] Appellants filed an amended complaint in the Circuit Court for Baltimore City against appellees, Bank of America, N.A. ("Bank of America") and the Attorney General of Maryland, Douglas Gansler ("Attorney General"), in his official capacity, alleging conversion and/or trespass to chattel, breach of contract, and a violation of the Expedited Funds Availability Act. Appellants further requested a declaratory judgment that appellees violated Md. Code (1974, 2013 Repl.Vol.), § 11–603(c) of the Courts and Judicial Proceedings Article[3] [hereinafter Cts. & Jud. Proc.

---

1. As a means to avoid confusion, because the parties share the same surname, we refer to the parties by first name.

2. Dorothy is not a party to this appeal and was not a party to the complaint.

3. Md.Code (1974, 2013 Repl.Vol.), § 11–603(c) of the Courts and Judicial Proceedings Article provides:

    (c) *All accounts in the name of 2 or more persons.*—(1) Notwithstanding subsections (a) and (b) of this section and regardless of the relationship between or among the persons, if property held in an account in the name of 2 or more persons at a bank, trust company, credit union, savings bank, or savings and loan association or any of

Art. § 11–603(c) ], the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Article 19 of the Maryland Declaration of Rights, and Article 3, Section 43 of the Maryland Constitution.[4] Appellees filed their respective motions for judgment, which the trial court granted. Appellants noted an appeal, and present five issues for our consideration:

> 1.   Did the trial court erroneously fail to give [ ][a]ppellants a reasonable opportunity to introduce materials pertinent to whether Lavelle O'Brien's account was a joint account?

---

> their affiliates or subsidiaries is garnished, and fewer than all of the persons named on the account are the judgment debtors, the garnishee may answer the writ of garnishment by stating:
>
>   (i) That the property is held in an account at the garnishee in the name of 2 or more persons, 1 or more of whom but fewer than all of whom, are judgment debtors; and
>
>   (ii) The amount held in the account at the time the writ of garnishment was served on the garnishee.
>
>   (2) If the garnishee answers as described in paragraph (1) of this subsection, the garnishee shall hold the lesser of the amount of the judgment or the amount in the account subject to an entry of a court order releasing the property held by the garnishee or a final judgment in the garnishment proceeding.
>
>   (3) If the garnishee answers and holds property as provided under paragraphs (1) and (2) of this subsection, the garnishee may not be held liable to the judgment creditor or to any person named on the account for wrongful dishonor or for any other claim relating to the garnishment.
>
> 4.   Section 1 of the Fourteenth Amendment to the U.S. Constitution [hereinafter "Due Process Clause of the U.S. Constitution" or "Due Process Clause"] states (emphasis added):
>
> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any state deprive any person of life, liberty, or property, without due process of law;** nor deny to any person within its jurisdiction the equal protection of the laws.
>
> Article 19 of the Maryland Declaration of Rights provides:
>
> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.
>
> Article 3, Section 43 of the Maryland Constitution reads:
>
> The property of the wife shall be protected from the debts of her husband.

2. Did the trial court commit a legal error by finding and declaring that subsection 11–603(c) does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

3. Did the trial court commit a legal error by finding and declaring that subsection 11–603(c) does not violate Article [3], [S]ection 43 of the Maryland Constitution?

4. Did the trial court commit a legal error by finding and declaring that subsection 11–603(c) does not violate Article 19 of the Maryland Declaration of Rights?

[5]. Did the trial court commit a legal error by finding that the seized accounts were "available for withdrawal" under the Expedited Funds Availability Act?

For the reasons that follow, we answer all of the above-mentioned questions in the negative. We affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 2009, Citi Financial, Inc. ("Citi Financial") obtained a judgment against Dorothy in the District Court of Maryland for Prince George's County ("District Court").[5] Citi Financial filed a request for a writ of garnishment, seeking garnishment of Dorothy's Bank of America accounts. On July 26, 2010, the District Court issued service of a writ of garnishment on Bank of America, which directed it "to seize and hold all of Dorothy's property that was in the bank's possession."[6] On August 20, 2010, Bank of America filed a plea, stating:

1. Garnishee holds property in a checking account no. XXXXXXXX6220, savings account no. XXXXXXXX9379, savings account no. XXXXXXXX9382 and checking account no. XXXXXXXX7801 all accounts are in the name of two (2) or more persons, one (1) or

---

5. The record is unclear regarding the amount that Dorothy owed to Citi Financial.

6. The record does not include the District Court's writ of garnishment.

more of whom but fewer than all of whom, are judgment debtors.

2. Pursuant to Md.Code Ann., Cts. & Jud. Proc. Art., § 11–603, Garnishee is holding in said accounts the amounts of $241.87, $15.17, $10.01, and $900.00, respectively, pending further order of the [c]ourt.

According to the Bank of America Deposit Agreement and Disclosures ("Deposit Agreement"), signature cards, and bank statements, Dorothy and Michael jointly owned three of the above-mentioned bank accounts, and in 2000 or 2001, pursuant to a power of attorney, Dorothy and Michael were authorized to use and withdraw funds from the remaining account, which belonged to Lavelle.

Thereafter, Dorothy filed a motion for release of garnished funds, prompting Citi Financial, Bank of America, and Dorothy to enter into an agreement.[7] As a result, the District Court issued an order on September 14, 2010, which granted Dorothy's motion, stating (strike-outs omitted) (signatures omitted):

Upon review and consideration of the Judgment Debtor's Motion for Release of all Garnished Funds, other than wages, any opposition thereto, and for good cause demonstrated, it is this 14th day of Sept.,         , 2010

**ORDERED,** that Judgment Debtor's Motion for Release of Garnished Funds other than wages be, and the same hereby is, **GRANTED;** by agreement; and

**ORDERED,** that the garnishment directed to the Garnishee be, and the same hereby is, **QUASHED;** and it is further

**ORDERED,** that any monies being held by the Garnishee other than wages pursuant to the Garnishment in the name of the Judgment Debtor be released forthwith to the Judgment Debtor.

---

7. The record is devoid of Dorothy's motion for release of garnished funds, as well as the agreement. We perceive that both were filed after Bank of America's plea.

On July 26, 2011, appellants filed a complaint in the Circuit Court for Baltimore City against appellees,[8] alleging conversion and/or trespass to chattel, breach of contract, and a violation of the Expedited Funds Availability Act. Appellants contended that Bank of America did not release the funds, despite notification that the garnishment neither applied to the joint marital accounts nor Lavelle's account. On September 9, 2011, Bank of America filed its motion to dismiss. On September 26, 2011, appellants filed their opposition to Bank of America's motion, to which Bank of America filed a reply on October 14, 2011.

On December 6, 2011, appellants filed an amended complaint, adding the Attorney General to the action. Appellants further requested a declaratory judgment that appellees violated Cts. & Jud. Proc. Art. § 11–603(c), the Due Process Clause of the U.S. Constitution, Article 19 of the Maryland Declaration of Rights, and Article 3, Section 43 of the Maryland Constitution. On December 27, 2011, Bank of America filed its motion to dismiss the amended complaint. On January 4, 2012, the Attorney General filed his motion to dismiss or, in the alternative, motion for summary judgment. On January 17 and January 23, 2012, appellants filed their respective oppositions to Bank of America's and the Attorney General's motions. On January 31, 2012, Bank of America filed a reply in support of its motion to dismiss and a response to the Attorney General's motion. Following a motions hearing, the court treated Bank of America's and the Attorney General's motions to dismiss as motions for summary judgment. On May 24, 2012, the court issued a memorandum opinion, final declaratory judgment, and order, granting the motions for summary judgment and holding that Cts. & Jud. Proc. Art. § 11–603(c) did not violate the Due Process Clause of the U.S. Constitution, Article 19 of the Maryland Declaration of Rights, or Article 3, Section 43 of the Maryland Constitution.

---

8. Instead of filing the complaint in Prince George's County or their county of residence, Baltimore County, appellants explained that "Baltimore City [was] an appropriate venue ... because Bank of America's resident agent [was] located in Baltimore City."

## STANDARD OF REVIEW

The question of whether summary judgment under Maryland Rule 2–501 was properly granted is one of law, which we review *de novo* in order to determine whether the trial court was legally correct. *David A. Bramble, Inc. v. Thomas,* 396 Md. 443, 453, 914 A.2d 136 (2007) (citing *Walk v. Hartford Cas.,* 382 Md. 1, 14, 852 A.2d 98 (2004); *Todd v. Mass Transit Admin.,* 373 Md. 149, 154, 816 A.2d 930 (2003); *Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 533, 836 A.2d 655 (2003); *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993)). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and . . . the party [in whose favor judgment is entered] is entitled to judgment as a matter of law." Md. Rule 2–501(f). Upon any given statement of facts, or upon clear facts, the legal relation that existed between the parties must be decided by the court. *Whitehead v. Safway Steel Prods., Inc.,* 304 Md. 67, 73–74, 497 A.2d 803 (1985).

In reviewing the grant of summary judgment, " 'we independently review the record to determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.' " *Charles County Comm'rs v. Johnson,* 393 Md. 248, 263, 900 A.2d 753 (2006) (quoting *Myers v. Kayhoe,* 391 Md. 188, 203, 892 A.2d 520 (2006)). Our examination is limited to the same record and legal reasoning that the trial court analyzed to grant the motion for summary judgment. *D'Aoust v. Diamond,* 424 Md. 549, 575, 36 A.3d 941 (2012) (citing *Messing v. Bank of Am., N.A.,* 373 Md. 672, 684, 821 A.2d 22 (2003); *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.,* 404 Md. 560, 571, 948 A.2d 11 (2008)) (parenthetical phrase omitted); *see also River Walk Apartments, LLC v. Twigg,* 396 Md. 527, 541–42, 914 A.2d 770 (2007) (quoting *Standard Fire Ins. Co. v. Berrett,* 395 Md. 439, 451, 910 A.2d 1072 (2006)). "So long as the record reveals no genuine dispute of any material fact necessary to resolve the controversy as a matter of law, and it is shown that the movant is entitled to judgment, the entry of summary judg-

ment is proper." *Appiah v. Hall,* 416 Md. 533, 547, 7 A.3d 536 (2010) (internal quotation omitted) (*O'Connor v. Baltimore County,* 382 Md. 102, 111, 854 A.2d 1191 (2004)).

## DISCUSSION

### I. Whether The Trial Court Provided Appellants A Reasonable Opportunity To Introduce Materials Pertinent To Whether Lavelle's Account Was A Joint Account.

Appellants allege that Bank of America first argued during the motions hearing that Lavelle's account was jointly owned. As a result, appellants maintain that the trial court did not provide them with a reasonable opportunity to submit material to counter Bank of America's contention.

In *Worsham v. Ehrlich, et al.,* 181 Md.App. 711, 716, 957 A.2d 161 (2008), the defendants instigated pre-recorded telephone communications regarding political candidates. As a result, in November 2006, the plaintiff filed an action against three defendants, alleging violations of consumer protection laws that shielded consumers against unwanted telephone solicitations that encompassed commercial content. *Id.* at 715, 957 A.2d 161. In January 2007, the plaintiff submitted "call trace" phone records and an affidavit when he added two defendants to the action and filed a motion for partial summary judgment. *Id.* at 716, 957 A.2d 161. Thereafter, a hearing was held because three defendants filed their respective motions to dismiss. *Id.* at 716–17, 957 A.2d 161. In May 2007, on the same day that the hearing occurred, another defendant (hereinafter "fourth defendant") filed his motion to dismiss. Two weeks later, the plaintiff filed his response to the fourth defendant's motion, and in June 2007, the plaintiff requested a second hearing. *Id.* at 717, 957 A.2d 161. Several days later, the court granted the initial defendants' motions to dismiss. *Id.* In August 2007, the court denied the plaintiff's request for a second hearing, stating "an additional hearing on [the fourth defendant's] motion to dismiss ... would have been pointless as the court had already heard and considered

legal argument on [the plaintiff's] opposition to the motions to dismiss at the [initial] hearing. . . ." *Id.* at 718, 957 A.2d 161.

On appeal, the plaintiff averred that the trial court erred because it did not grant his second request for a hearing. *Id.* at 715, 957 A.2d 161. Our Court examined Md. Rule 2–322(c),[9] and acknowledged that the plaintiff "attached extraneous material, i.e., the affidavit, to his motion for partial summary judgment, and argued his position in support of that motion" at the first hearing. *Id.* at 723, 957 A.2d 161. Hence, our Court affirmed, concluding that the plaintiff "had a full and fair opportunity to present his arguments with respect to the law at the [first] motions hearing. . . . A second hearing would have been merely duplicative." *Id.* at 731–32, 957 A.2d 161 (citing *Vinogradova v. Suntrust Bank, Inc.,* 162 Md.App. 495, 511, 875 A.2d 222 (2005)).

In *Hrehorovich v. Harbor Hospital Center, Inc., et al.,* 93 Md.App. 772, 777–78, 614 A.2d 1021 (1992), the defendants-employers terminated the plaintiff's-employee's position as a hospital director when an advisory committee determined that the plaintiff was no longer competent in performing his duties. The plaintiff filed a complaint against the defendants, alleging several causes of action, including wrongful termination, and attached certain provisions of the hospital's bylaws and the employment manual. *Id.* at 778–79, 614 A.2d 1021. The defendants filed a motion to dismiss, submitted other sections of the bylaws and manual, and maintained that neither established an employment contract. *Id.* at 779–80, 614 A.2d 1021. The trial court granted the defendant's motion, but without a memorandum opinion.[10] *Id.* at 778, 614 A.2d 1021.

---

9.  Maryland Rule 2–322(c) provides the following:
    (c) **Disposition**. . . . If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [Md.] Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by [Md.] Rule 2–501.

10. On appeal, our Court surmised that the trial court converted the motion to dismiss to a motion for summary judgment because it

On appeal, the plaintiff alleged that the court erred in treating the motion as one for summary judgment because the court did not provide him with sufficient notice that it would consider the defendant's supplementary materials. *Id.* at 785, 614 A.2d 1021. The plaintiff further maintained that if known, he would have contested the defendant's position with his "evidence, testimony and documents." *Id.* at 785–86, 614 A.2d 1021 (internal quotations omitted). Our Court determined that the plaintiff was aware that the trial court could consider ancillary documents, *id.* at 786, 614 A.2d 1021, and that he failed to provide further information because he lacked such evidence. *Id.* at 788, 614 A.2d 1021. Accordingly, our Court affirmed the trial court's decision. *Id.* at 801, 614 A.2d 1021.

■ As stated previously in the instant case, the trial court converted Bank of America's and the Attorney General's motions to dismiss into motions for summary judgment. Thus, Md. Rule 2–322(c) was triggered, and the trial court had to provide appellants with a "reasonable opportunity to present all material made pertinent to such a motion by [Md.] Rule 2–501." Md. Rule 2–322(c).

After appellants filed their initial complaint, Bank of America filed a motion to dismiss and a reply in support of its motion. In the reply, Bank of America explained that Lavelle's account had joint ownership because Michael and Dorothy were listed on the account. Additionally, in support of its contention, Bank of America stated:

> At the outset, [Bank of America] requests that the [c]ourt take judicial notice pursuant to [Md.] Rule 5–201(b) [11] of: (1) the BOA [12] Deposit Agreement and Disclosures, which

---

considered matters beyond the pleadings. *Hrehorovich,* 93 Md.App. at 783, 614 A.2d 1021.

**11.** Md. Rule 5–201(c) provides that, "**When discretionary.** A court may take judicial notice, whether requested or not."

**12.** "BOA" refers to "Bank of America."

is a standard agreement for 27 states, including Maryland, and the District of Columbia; (2) a statement on Lavelle O'Brien's account showing the account ownership; (3) the Plea of Bank of America, N.A., Garnishee filed in the District Court . . . ; and (4) the Order of Court entered by the District Court. . . . These documents are attached to this [r]eply as [e]xhibits 1–4, respectively.

Specifically, the Deposit Agreement included a clause regarding "Joint Accounts," which stated:

> If more than one persons's name appears in the title of an account without a fiduciary, beneficiary or other designation, then the account is a joint account. All persons whose names appear on the account are co-owners of the account, regardless of whose money is deposited in the account.

Bank of America further attached the signature card, which was signed when appellants and Dorothy applied for the bank account, as well as bank statements from Lavelle's account. The bank statements were attached with Bank of America's reply in support of the motion to strike the jury demand and its reply in support of the motion to dismiss the amended complaint. Moreover, in support of the Attorney General's motion to dismiss, or, in the alternative, a motion for summary judgment regarding joint ownership of Lavelle's account, he also attached the Bank of America Deposit Agreement.

Unlike the plaintiff in *Worsham,* but akin to the plaintiff in *Hrehorovich,* appellants had notice regarding Bank of America's contention, but did not possess any documentation or materials to refute Bank of America's argument that Lavelle's account was jointly owned. We perceive that this explains why no exhibits were attached in explanation. As a result, appellants "knew of the extraneous materials, had an opportunity to respond to them, and had not refuted their accuracy." *Hrehorovich,* 93 Md.App. at 787, 614 A.2d 1021. Accordingly, the trial court complied with the requirements of Md. Rule 2–322(c).

II. **Whether The Trial Court Committed A Legal Error By Finding And Declaring That Cts. & Jud. Proc. Art. § 11–603(c) Did Not Violate The Due Process Clause Of The U.S. Constitution Or Article 19 of the Maryland Declaration Of Rights.**

In *Tyler v. City of College Park*, 415 Md. 475, 500–01, 3 A.3d 421 (2010), the Court of Appeals discussed the standard of review for determining whether statutes are unconstitutional due to a failure to afford a citizen his or her right to due process, stating:

> In order to determine whether a given statute or ordinance satisfies the due process requirement . . . , we ask rhetorically whether the legislative enactment, as an exercise of the legislature's police power, bears a real and substantial relation to the public health, morals, safety, and welfare of the citizens of the State or municipality. *Westchester West No. 2 Ltd. P'ship v. Montgomery County*, 276 Md. 448, 454 [348 A.2d 856] (1975); *Bowie Inn, Inc. v. City of Bowie*, 274 Md. 230, 236 [335 A.2d 679] (1975). In applying this test, courts perform a very limited function, resisting interference unless it is shown that the legislature exercised its police power arbitrarily, oppressively, or unreasonably. *Westchester West*, 276 Md. at 460 [348 A.2d 856] . . . (noting that "[p]rice control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty") (quoting *Nebbia v. New York*, 291 U.S. 502, 539 [54 S.Ct. 505, 78 L.Ed. 940] (1934)); *see also Hargrove v. Bd. of Trustees of Md. Retirement Sys.*, 310 Md. 406, 427 [529 A.2d 1372] (1987); *Bowie Inn*, 274 Md. at 236 [335 A.2d 679]. . . . The wisdom or expediency of a statute duly adopted by the legislative body is not subject to judicial scrutiny, and the statute will not be held void if there are any considerations relating to the public welfare by which it may be supported. *Hargrove*, 310 Md. at 427 [529 A.2d 1372]; *Westchester*, 276 Md. at 455 [348 A.2d 856]; *Bowie Inn*, 274 Md. at 236 [335 A.2d 679]. . . . We have

noted that " 'courts are under a special duty to respect the legislative judgment where the legislature is attempting to solve a serious problem in a manner which has not had an opportunity to prove its worth.' " *Bowie Inn,* 274 Md. at 237 [335 A.2d 679]. . . . As such, courts should hesitate before invalidating an ordinance where doing so would deprive the legislative body contemplating such a statute " 'of any opportunity to discover whether the chosen method will be good, bad or indifferent in its results.' " *Id.* at 237–38 [335 A.2d 679]. . . .

In accordance with the abovementioned standard, we review Cts. & Jud. Proc. Art. § 11–603(c)'s legislative history and policy to determine whether the General Assembly exercised its power properly or arbitrarily, and whether the public's welfare was contemplated in enacting this statute, which relates to the garnishment of joint accounts. In *Maryland Nat. Bank v. Pearce,* 329 Md. 602, 620–25, 620 A.2d 941 (1993) [hereinafter *"Pearce "*], the Court of Appeals discussed the origin of Cts. & Jud. Proc. Art. § 11–603(c), stating:

Ch. 818 of the Acts of 1989 began its legislative life with the introduction of House [B]ill 1027. That bill provided:

"AN ACT concerning

Garnishment—Jointly Owned Property

FOR the purpose of providing that a garnishment against jointly held property in the hands of certain financial institutions is not valid unless all owners of the property are judgment debtors.

BY adding to

Article—Courts and Judicial Proceedings Section 11–603

Annotated Code of Maryland

(1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings 11–603.

A GARNISHMENT AGAINST JOINTLY HELD PROPERTY, IN THE HANDS OF A BANK, TRUST COMPANY, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ALL OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS."

After its first reading, the bill was referred to the Committee on Judiciary. 1989 House Journal, at 686–87. That Committee reported two amendments to the bill and, as amended, gave the bill a favorable report. The bill, as amended, was then read for the second time. 1989 House Journal, at 1790–91. After a third reading[,] the bill, as amended, was passed by the House and sent to the Senate. 1989 House Journal, at 1940–41. When it was sent to the Senate, the bill was in the following form:

"AN ACT concerning

Garnishment—Jointly Owned Property Property Held Jointly by Husband and Wife

FOR the purpose of providing that a garnishment against jointly held property in the hands of property held jointly by husband and wife in certain financial institutions is not valid unless all both owners of the property are judgment debtors.

BY adding to

Article—Courts and Judicial Proceedings Section 11–603

Annotated Code of Maryland

(1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings 11–603.

A GARNISHMENT AGAINST JOINTLY HELD PROPERTY, IN THE HANDS OF PROPERTY

HELD JOINTLY BY HUSBAND AND WIFE, <u>IN</u> A BANK, TRUST COMPANY, <u>CREDIT UNION,</u> SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ~~ALL~~ <u>BOTH</u> OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS.[13]"

H.B. 1027, as amended, was read for the first time in the Senate and referred to its Judicial Proceedings Committee. 1989 Senate Journal, at 1754. That committee made several amendments. It amended the title of the bill by striking "Property Held Jointly by Husband and Wife" and substituting "Jointly Owned Property"; in the second and third lines of the purpose clause, it struck "property held jointly by husband and wife in" and substituted "jointly held property in the hands of"; in the third line of the purpose clause, it struck "not"; in the fourth line of the purpose clause, it struck "unless" and substituted "regardless of whether all"; in the same line, it struck "both"; and in the fifth line of the purposes clause after "debtors", it inserted "and providing for a certain exception." In the first line of the body of the bill, before "A", it inserted "(A) except as provided in subsection (B) of this section"; in the second line, it struck "property held jointly by husband and wife and substituted "jointly held property, in the hands of"; in the fourth line, it struck "not"; in the fifth line, it struck "unless" and substituted "regardless of whether all"; in the same line, it struck "both"; and after the last line, it inserted "(B) This section does not apply to property designated as owned by one party in trust for that party and another party or parties, unless all the parties are judgment debtors." As amended, the committee reported the bill favorably, and it was read for the second time. 1989 Senate Journal, at 2254–55. The

---

13. "The underlining above indicates the amendments to H.B. 1027[,] which were adopted in the House. The ~~strike-outs~~ indicate the matter stricken from H.B. 1027 by the amendments[,] which were adopted in the House." *Pearce,* 329 Md. at 621, 620 A.2d 941.

bill, as amended, was read for a third time and passed by the Senate. 1989 Senate Journal, at 2388.

When H.B. 1027 was returned to the House, the House refused to accept the Senate amendments. 1989 House Journal, at 2549–50. The Senate refused to recede from its amendments, and the bill was sent to a conference committee. 1989 Senate Journal, at 2775–76. The conference committee made several amendments, and following these amendments, H.B. 1027 provided:

"AN ACT concerning

Garnishment—~~Jointly Owned Property~~ Property Held Jointly by Husband and Wife

FOR the purpose of providing that a garnishment against certain ~~jointly held property in the hands of~~ property held jointly ~~by husband and wife~~ in certain financial institutions is not valid unless ~~all~~ both *the* owners of the property are judgment debtors; **permitting certain financial institutions to pay a certain amount into court under certain circumstances if property in a joint account is garnished; and providing that under certain circumstances a garnishee may not be held liable to the judgment creditor or any person named on a joint account that is subject to garnishment.**

BY adding to

Article—Courts and Judicial Proceedings Section 11–603

Annotated Code of Maryland (1984 Replacement Volume and 1988 Supplement)

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

Article—Courts and Judicial Proceedings 11–603,

(A)(1) **EXCEPT AS PROVIDED IN PARAGRAPH (2) OF THIS SUBSECTION,** A GARNISHMENT AGAINST ~~JOINTLY HELD PROPERTY, IN THE HANDS OF~~ PROPERTY HELD JOINTLY BY HUSBAND AND WIFE, IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN AS-

SOCIATION OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES IS NOT VALID UNLESS ALL BOTH OWNERS OF THE PROPERTY ARE JUDGMENT DEBTORS.

(2) PARAGRAPH (1) OF THIS SUBSECTION DOES NOT APPLY UNLESS THE PROPERTY IS HELD IN AN ACCOUNT THAT WAS ESTABLISHED AS A JOINT ACCOUNT PRIOR TO THE DATE OF ENTRY OF JUDGMENT GIVING RISE TO THE GARNISHMENT.

(B) A GARNISHMENT AGAINST PROPERTY HELD IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION, OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES, BY ONE PARTY IN TRUST FOR THAT PARTY AND ANOTHER PARTY OR PARTIES, IS NOT VALID UNLESS ALL OF THE PARTIES ARE JUDGMENT DEBTORS.

(C)(1) IF PROPERTY HELD JOINTLY IN A BANK, TRUST COMPANY, CREDIT UNION, SAVINGS BANK, OR SAVINGS AND LOAN ASSOCIATION, OR ANY OF THEIR AFFILIATES OR SUBSIDIARIES, IS GARNISHED, AND LESS THAN ALL OF THE PERSONS NAMED ON THE ACCOUNT ARE THE JUDGMENT DEBTORS, THE GARNISHEE MAY PAY INTO THE COURT FROM WHICH THE WRIT OF GARNISHMENT HAS BEEN ISSUED THE LESSER OF THE AMOUNT OF THE JUDGMENT OR THE AMOUNT HELD IN THE ACCOUNT.

(2) IF THE GARNISHEE MAKES PAYMENT INTO THE COURT AS PROVIDED UNDER PARAGRAPH (1) OF THE SUBSECTION, THE GARNISHEE MAY NOT BE HELD LIABLE TO THE JUDGMENT CREDITOR OR TO ANY PERSON NAMED ON THE ACCOUNT FOR WRONGFUL DISHONOR OR FOR ANY OTHER CLAIM RELATING TO THE GARNISHMENT.[14]"

---

14. "The underlining indicates the amendments to H.B. 1027 as originally introduced. Strike outs indicate matter stricken from the origi-

The bill was passed by both the Senate and House in that form.

The amendments to H.B. 1027 from the time it passed the House until its final enactment furnish evidence of the legislative intent. Under the House version, all joint accounts of a husband and wife would have been exempt from attachment by a judgment creditor of either. The Senate version, on the other hand, would have rendered all joint accounts subject to garnishment by a judgment creditor of any one of the joint owners except that it exempted those joint accounts which were in trust form. The conference committee resolved the conflict between the two versions exempting from garnishment those joint accounts held by husband and wife which were opened prior to the date of the judgment giving rise to the garnishment. At the same time[,] the conference committee distinguished between joint accounts and those which were created in trust form.

*Pearce,* 329 Md. at 620–25, 620 A.2d 941.

Cts. & Jud. Proc. Art. § 11–603(c) currently reads:

(c) *All accounts in the name of 2 or more persons.*—(1) Notwithstanding subsections (a) and (b) of this section and regardless of the relationship between or among the persons, *if property held in an account in the name of 2 or more persons at a bank, trust company, credit union, savings bank, or savings and loan association or any of their affiliates or subsidiaries is garnished,* and fewer than all of the persons named on the account are the judgment debtors, the garnishee may answer the writ of garnishment by stating:

(i) That the property is held in an account at the garnishee in the name of 2 or more persons, 1 or more of whom but fewer than all of whom, are judgment debtors; and

(ii) The amount held in the account at the time the writ of garnishment was served on the garnishee.

---

nally introduced bill by House amendments. Bold script denotes the conference committee amendments." *Pearce,* 329 Md. at 624, 620 A.2d 941.

(2) If the garnishee answers as described in paragraph (1) of this subsection, the garnishee shall hold the lesser of the amount of the judgment or the amount in the account subject to an entry of a court order releasing the property held by the garnishee or a final judgment in the garnishment proceeding.

(3) If the garnishee answers and holds property as provided under paragraphs (1) and (2) of this subsection, the garnishee may not be held liable to the judgment creditor or to any person named on the account for wrongful dishonor or for any other claim relating to the garnishment.

■ "Proceedings via writ of garnishment permit the attachment of the property of the judgment debtor in the possession of third parties and, when the writ has been issued and served, require the garnishee, the third party possessor, to keep safe the property in his [or her] possession or that may come into possession." *Med. Mut. Liability Ins. Soc. of Maryland v. Davis*, 389 Md. 95, 101–02, 883 A.2d 158 (2005) (citing *Parkville Fed. Sav. Bank v. Maryland Nat. Bank*, 343 Md. 412, 419, 681 A.2d 521 (1996); *Fico, Inc. v. Ghingher*, 287 Md. 150, 162, 411 A.2d 430 (1980)). First, a garnishment against a joint bank account held by spouses is only valid if the account was in existence before the court entered a judgment regarding the garnishment. Therefore, if the creditor obtains a judgment against the debtor, and several months later, the debtor opens a joint bank account with his or her spouse, the court judgment does not "attach." This differs from secured transactions regarding after-acquired property, as Md.Code (1975, 2002 Repl.Vol.), § 9–204(a) of the Commercial Law Article provides:

(a) Except as otherwise provided in subsection (b), a security agreement may create or provide for a security interest in after-acquired collateral.[15]

---

**15.** Md.Code (1975, 2002 Repl.Vol.), § 9-204(b) of the Commercial Law Article provides:

(b) A security interest does not attach under a term constituting an after-acquired property clause to:

If the first condition is established, then the General Assembly has provided the garnishee, usually a financial institution, the discretion to reply to the writ of garnishment. If the garnishee does exercise its discretion in answering the writ, it must "hold" the debtor's property, regardless of whether the account is jointly owned, and may not be held liable for following the statute's requirements.

We note that the paramount change between the older version, which was drafted as a result of the conference committee, and the current version, is the location of the monetary property after the garnishee answers the writ of garnishment. In the former, the garnishee could exercise its option to "**pay into the court** from which the writ of garnishment ha[d] been issued." *See Pearce,* 329 Md. at 624, 620 A.2d 941 (emphasis added). Currently, however, the garnishee "freezes" the monetary property while it **remains in the account.** *See* Cts. & Jud. Proc. § 11–603(c) (emphasis added).

As explained in a floor report of the Senate Judicial Proceedings Committee of the 1991 General Assembly,

According to testimony, financial institutions have hesitated to exercise the right to pay money into court based on various interpretation of the current law. This has been particularly true where an account is titled in the name of husband and wife. Some have questioned whether "husband and wife" accounts are considered "joint accounts" for purposes of the "safe harbor" provisions. Also, as a practical matter, the financial institution may not know at the time of garnishment whether the account holders are husband and wife.

SENATE JUDICIAL PROCEEDINGS COMMITTEE, FLOOR REPORT, SB 469, 1991 General Assembly (1991 Md.). As a result of the financial institutions' apprehension, Senate Bill 469 was recommended, which sought to clarify

---

(1) Consumer goods, other than an accession when given as additional security, unless the debtor acquires rights in them within 10 days after the secured party gives value; or

(2) A commercial tort claim.

whether the garnishee may place the monetary property of any joint account into the court. *Id.* Senate Bill 469 removed the "pay into the court" language, and replaced it with "answer," providing:

(c) (1) [If] NOTWITHSTANDING SUBSECTIONS (A) AND (B) OF THIS SECTION AND REGARDLESS OF THE RELATIONSHIP BETWEEN OR AMONG THE PERSONS, IF property held [jointly] in an account in THE NAME OF 2 OR MORE PERSONS AT a bank, trust company, credit union, savings bank, or savings and loan association[,] or any of their affiliates or subsidiaries[,] is garnished, and [less] FEWER than all of the persons named on the account are the judgment debtors, the garnishee may ~~pay into the court from which~~ *ANSWER* the writ of garnishment has been issued *BY STATING:*

S.B. 469, 401st Gen. Assem., Reg. Sess. (Md.1991). The amendments were approved on April 30, 1991. *Id.*

In *Pearce*, 329 Md. at 605, 620 A.2d 941, a defendant-creditor ("creditor") obtained a judgment in the amount of $113,500 against the debtor regarding legal malpractice. Approximately ten years later, the creditor filed a request for a writ of garnishment regarding the debtor's bank account. *Id.* at 607, 620 A.2d 941. In response to the writ, the plaintiff-bank ("bank") originally indicated that "the joint nature of th[e] [debtor's] account preclude[d] garnishment for the satisfaction of the judgment entered. . . ." *Id.* A year later, the bank filed an amended answer and stated:

It confesses that it holds assets of the [debtor] in an account owned by two (2) or more persons, one (1) or more of whom but fewer than all of whom, are judgment debtors. Garnishee is holding assets consisting of money market account no. 0960126100 with a balance of $8,636.45, pending further order of the [c]ourt.

*Id.* (quotations omitted).

Following a trial, the court concluded that although the bank account was jointly owned, the debtor's account could be garnished to satisfy the creditor's judgment. *Id.* at 608, 620

A.2d 941. The court found in favor of the creditor, and against the bank for approximately $34,000. *Id.* The bank appealed to our Court, but the Court of Appeals granted *certiorari* before we heard the action. *Id.*

On appeal, the bank argued that the trial court erred in its findings because the debtor and his wife's account was jointly owned by the spouses in trust, and thereby, no judgments could attach to the account. *Id.* at 608–09, 620 A.2d 941. After researching the legislative history of Cts. & Jud. Proc. § 11–603(b), the Court determined that the jointly owned account was "property held in trust," and because only one spouse was a debtor, the judgment was void. *Id.* at 626, 620 A.2d 941. Accordingly, the Court reversed the trial court's ruling. *Id.*

*Pearce* is distinguishable from the instant case because the *Pearce* plaintiffs possessed property that was held in trust. As previously indicated, a garnishment is only lawful against trust accounts if both holders are the debtors. If not, the General Assembly has provided an exemption, indicating that the garnishment is then invalid. In the case at bar, appellants' accounts were not opened at Bank of America to be held in trust by each other. While the U.S. District Court for the District of Maryland has considered adequate notice to judgment debtors, *see Reigh v. Schleigh,* 595 F.Supp. 1535 (D.Md. 1984), *rev'd,* 784 F.2d 1191 (4th Cir.1986) (determining whether creditors should provide judgment debtors of garnishment proceedings adequate notice regarding potential exemptions), beyond *Pearce,* we have not found any Maryland cases concerning garnishment of joint bank accounts pertaining to non-debtors. While the issue is one of first impression in Maryland, other jurisdictions have considered the issue. Hence, we analyze their statutes and case law.

In *Savig v. First Nat. Bank of Omaha,* 781 N.W.2d 335, 336 (Minn.2010), the Minnesota Courts were "require[d][ ] to answer certified questions of law concerning the interplay between Minnesota's garnishment statutes ... and Minnesota's Multiparty Accounts Act...." In *Savig,* the trial court en-

tered a judgment of approximately $8,100 in favor of the defendant, First National Bank ("First National"), and against the plaintiff-debtor and her former husband for defaulting on their credit card payments. *Id.* at 336–37.

The plaintiff later remarried, and thereafter, First National requested a writ of garnishment to be served on the plaintiff's bank, Midwest Bank ("Midwest"), which was granted. *Id.* at 337. Pursuant to Minnesota laws, Midwest answered the writ and indicated that it possessed two of the plaintiff's accounts, which she shared with her second husband ("husband"). *Id.* Midwest held the funds, and neither the plaintiff nor her husband "claim[ed] any exemptions, did not request a hearing, and [the husband] did not intervene to claim any interest in the funds." *Id.* at 337.

Thereafter, the plaintiff and her husband filed an action in the U.S. District Court for the District of Minnesota ("Minnesota District Court") against First National, alleging a violation of due process, *id.*, and that Midwest unlawfully garnished the husband's funds. *See id.* at 338. First National then filed a motion for summary judgment. *Id.* Because this was a case of first impression, the Minnesota District Court stayed the action until the Minnesota Supreme Court resolved three specific questions relating to the garnishment statutes and joint accounts. *Id.*

Regarding the plaintiffs' "due process" argument, the Minnesota Supreme Court considered the issue in an effort to guide the Minnesota District Court, stating:

> The [plaintiffs] cite no authority for the proposition that post-judgment garnishment proceedings that allow a garnishee to initially retain funds belonging to a non-debtor joint account holder violate the non-debtor's due process rights.
>
> \* \* \*
>
> ... [A]lthough [the husband] did not receive a garnishment summons with his name on it, his affidavit makes clear that he was well aware of the garnishment proceeding because of the notice that was sent to [his wife]. [The husband's]

actual notice of the garnishment proceeding is further evidenced by the fact that after Midwest Bank initially retained the funds in the joint account on January 2, 2009, to complain to the law firm that they had seized his funds in the joint account. In spite of the formal notice to [the wife] and [the husband's] actual notice, [the plaintiffs] did not object to the garnishment in the manner provided in the garnishment statutes; they did not notify Midwest Bank or First National that they had objections ... nor did they request a hearing ... nor did [the husband] seek to intervene.... Instead, approximately 18 days after Midwest Bank had retained the funds in the account on January 2, 2009, the [plaintiffs] filed a complaint on January 20, 2009, in federal district court against First National and [its collective agency].

*Id.* at 348, n. 16.

After considering the principal questions, the Minnesota Supreme Court concluded that "a judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint account to satisfy the debt of an account holder, even though not all of the account holders [were] judgment debtors." *Id.* at 341. The Court further stated that "account holders [ ] [bore] the burden of establishing net contributions to the [joint] account during the garnishment proceeding." *Id.* Lastly, the Court determined that "a judgment debtor [was] initially, but rebuttably, presumed to own all of the funds in a joint account, and if the presumption [was] not rebutted, all of the funds in a joint account [were] subject to garnishment." *Id.* at 348 (footnote omitted). Predicated on these determinations, the Minnesota District Court determined that there was no violation of due process, and granted First National's motion for summary judgment.[16]

In *Ingram v. Hocking Valley Bank et al.*, 125 Ohio App.3d 210, 708 N.E.2d 232, 233 (1997), the Ohio Court of Appeals

---

16. The Minnesota District Court ruled on the issue in an unpublished case. *See Savig v. First Nat. Bank of Omaha*, 2011 WL 883642, at *3 (D.Minn.2011).

determined whether "[t]he trial court erred in holding that the bank was not responsible to notify [the plaintiff] of [a] garnishment." In *Ingram*, the defendant-hospital obtained a judgment against the plaintiff's wife ("wife"), and requested a writ to turnover funds. *Id.* at 234. The wife's bank, Hocking Valley Bank ("Hocking Valley"), indicated that the wife owned two accounts that she shared with the plaintiff-husband. *Id.* at 233. Pursuant to the writ, Hocking Valley froze the accounts. *See id.* at 234. The plaintiff filed an action, averring that Hocking Valley should have notified him concerning the garnishment. *Id.* at 241. Thereafter, Hocking Valley filed a motion for summary judgment, maintaining that "because [the plaintiff] and his wife signed consumer account agreements which authorized either party to withdraw money from the joint accounts, both [the plaintiff] and his wife had a present possessory interest in the entire accounts." *Id.* at 235. The trial court granted Hocking Valley's motion. *Id.* at 236.

On appeal, the Ohio Court of Appeals analyzed its statute, which provided that, "notice must be given to the judgment debtor." *Id.* at 241. The Court noted that the statute did not indicate that a bank must or may provide the non-debtor notification of the garnishment. *Id.* Furthermore, the Court stated that the plaintiff did not support his contentions with Ohio case law. *Id.* Accordingly, the Court determined that the trial court did not err in granting the defendant's motion for summary judgment, and affirmed. *Id.* at 242.

In *Fleet Bank Connecticut, N.A. v. Carillo*, 240 Conn. 343, 691 A.2d 1068, 1069 (1997), a trial court issued a monetary judgment for approximately $58,000 against the defendant's husband ("husband"). The company assigned the judgment to the plaintiff, who requested that the husband's bank, Collinsville Savings Bank ("Collinsville Savings"), release the husband's monetary property. *Id.* However, because the husband had a joint bank account with the defendant-wife, Collinsville Savings did not comply. *Id.* When the plaintiff filed a motion for a turnover order, the defendant contested the motion, averring that she was a non-debtor and that "her co-ownership

of the account shielded [the] proceeds." *Id.* Despite the defendant's arguments, the trial court granted the plaintiff's motion because the co-ownership "gave the plaintiff, as his creditor, a coextensive right to execute against the account funds in their entirety." *Id.*

On appeal, the defendant maintained that akin to a joint tenancy in real property, because a garnishment attached to her joint account, it then reduced to a "tenancy in common" account. *Id.* at 1070. Furthermore, the defendant averred that "the trial court should have performed an equitable accounting of the funds . . . ." *Id.* Before the Connecticut appellate court decided the issue, the Connecticut Supreme Court intervened. *Id.* at 1069. The Court indicated that their courts traditionally held that it was improper to employ the rules of property to the law of joint accounts. *Id.* at 1073. Furthermore, the Court stated that trial courts would sustain evidentiary and administrative hardships if a mandatory accounting was proposed. *Id.* Accordingly, the Court affirmed the trial court's ruling. *Id.* at 1074.

In *Mervyn's, Inc. v. Superior Court In and For Maricopa County*, 144 Ariz. 297, 697 P.2d 690, 691 (1985), the plaintiff-company filed an action against the defendant-trial court when it denied its motion for judgment. The plaintiff obtained a judgment against the debtor-wife ("debtor") for approximately $340.00. *Id.* at 692. The plaintiff requested a writ of garnishment to be issued to the debtor's bank, Valley National Bank ("Valley National"). *Id.* Valley National indicated that the debtor owned an account that she shared with her husband ("husband"). *Id.* To "join all persons who appear[ed] to have an interest in the bank account . . . ," the plaintiff attempted to deliver notification to the husband. *Id.* However, it could not, so it provided service by publication. *Id.* The trial court determined that " 'service by publication [was] insufficient to give [the husband] notice and an opportunity to be heard.' " *Id.* at 694. Consequently, the court did not order judgment against Valley National. *Id.* at 692.

Via a special action, the Arizona Supreme Court decided to rule on the issue. *See id.* The Court examined its statute regarding garnishment of joint accounts, but the statute did not provide for notification to non-debtors. *Id.* Thus, the Court considered its rules on civil procedure, which stated:

4(e)(3) **Summons: service by publication.** *Where by law personal service is not required,* and a person is subject to service ..., such service may be made by either of the methods set forth in [another provision] or by publication.

*Id.* at 693 (quotation omitted). Accordingly, the Court concluded that the trial court erred because due process did not require personal service. *Id.* at 694.

In *Am. Nat'l Bank & Trust Co. of Michigan v. B.C. Modderman,* 37 Mich.App. 639, 195 N.W.2d 342, 342–43 (1972), the plaintiff, American National Bank & Trust Company ("American National"), filed a complaint regarding a promissory note against the defendant-husband. The plaintiff requested the trial court to issue a writ of garnishment to the defendant's bank, First National Bank and Trust Company ("First National"). *Id.* at 343. Thereafter, the defendant's wife ("wife") averred that the First National accounts were jointly owned, and thereby, they were exempt from garnishment. *Id.*

The trial court held a hearing, and found that although the wife testified regarding her major contributions to the accounts, the defendant only "asserted ownership of the accounts in controversy when it was to his advantage to do so[.]" *Id.* at 344. Hence, the court ordered that the accounts be garnished. *Id.* at 343. On appeal, the Michigan Court of Appeals stated that the trial court properly used its discretion in determining whether the defendant's and his wife's testimonies were credible. Accordingly, the Court affirmed the trial court's ruling. *Id.* at 344.

We also examine federal cases that have ruled on a similar issue. In *Lind v. Midland Funding, L.L.C.,* 688 F.3d 402, 404 (8th Cir.2012), Bank of America obtained a judgment in the amount of approximately $11,500 against the plaintiff-debtor.

Bank of America assigned the judgment to the defendant-corporation, who requested a writ of garnishment to be served upon First National Bank ("First National"). *Id.* First National answered the writ and indicted that the plaintiff's assets were located in two bank accounts, a savings account and a joint account that the plaintiff shared with the plaintiff-wife ("wife"). *Id.* First National notified the plaintiff of its responsibility pursuant to the "garnishment" laws, but did not send notice to the wife. *Id.* Thereafter, the plaintiffs obtained legal assistance concerning the writ. *Id.*

The plaintiffs filed an exemption action regarding the joint account, and all the parties proceeded to settlement. *Id.* at 404–05. Mediation was unsuccessful, so the plaintiffs filed a complaint in the Minnesota District Court. *Id.* at 405. The plaintiffs alleged that the garnishment statutes violated the wife's due process rights, and were thereby unconstitutional. *Id.* at 405. The Minnesota District Court held that the wife "had received constitutionally sufficient notice and an opportunity for a hearing, and noting also that the [plaintiff and his wife] failed to allege any state action, as required by their due process claims." *Id.*

On appeal, the Eighth Circuit stated:

The attachment in this case occurred after the defendant[ ] had already secured a judgment on [the plaintiff's] debt. Courts have noted that, when balancing the due process interests of a creditor and a debtor, the creditor's interest should be accorded more weight in a postjudgment context than it should be accorded in a prejudgment attachment. *See Reigh v. Schleigh*, 784 F.2d 1191, 1198 (4th Cir.1986) (noting that "it is important to emphasize" the difference between prejudgment and postjudgment attachment, and that in the case of prejudgment attachment, "a party would be expected to enjoy greater rights than one who has already been adjudged judicially liable") (additional citations omitted).

*Id.* at 407. The Eighth Circuit determined that although the defendant only sent notice to the plaintiff, the wife still had

"actual notice," as evidenced that she sought legal advice along with her husband. *Id.* at 409. Additionally, the wife had "an opportunity for a postdeprivation hearing." *Id.* Accordingly, the Eighth Circuit affirmed, concluding that the Minnesota garnishment laws did not violate the Due Process Clause of the U.S. Constitution. *Id.*

In the case at bar, appellants aver that "by directing financial institutions to seize jointly owned accounts before giving the non-debtor owners notice and an opportunity for [a] hearing," their due process was violated. Appellants support their contentions with *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Fuentes,* deputy sheriffs seized the plaintiffs' properties, including kitchen appliances, electronics, furniture, clothing, and children's toys, before the plaintiffs "had even received a summons to answer [the] complaint[s]." *Id.* at 70–72, 92 S.Ct. 1983. The U.S. Supreme Court examined Florida's and Pennsylvania's prejudgment replevin provisions regarding the lack of due process. *Id.* at 69–70, 92 S.Ct. 1983.

> Both statutes provide[d] for the issuance of writs ordering state agents to seize a person's possessions, simply upon the ex parte application of any other person who claim[ed] a right to them and post[ed] a security bond. Neither statute provide[d] for notice to be given to the possessor of the property, and neither statute [gave] the possessor an opportunity to challenge the seizure at any kind of prior hearing.

*Id.* Accordingly, the U.S. Supreme Court concluded that the statutes were unconstitutional. *Id.* at 96, 92 S.Ct. 1983.

Appellants' support is misplaced because *Fuentes* differs from the instant case. *Fuentes* involves (1) prejudgment deprivation, (2) tangible personal property, and (3) state agents. The case at bar concerns postjudgment deprivation of intangible personal property. Citi Financial obtained a judgment against Dorothy in the District Court. Thereafter, Citi Financial filed a request for a writ of garnishment, seeking garnishment of Dorothy's Bank of America accounts, and the District Court issued service on Bank of America.

Appellants acknowledge that to establish a violation of the Due Process Clause of the U.S. Constitution, "the person initiating the seizure [must be] a government official." *Id.* at 91, 92 S.Ct. 1983. Furthermore, the Court of Appeals has traditionally held that ("[i]t is a basic tenet, expressed in Article 19 of the Maryland Declaration of Rights, that a plaintiff injured by **unconstitutional state action** should have a remedy to redress the wrong."[ ] ). *Jackson v. Dackman Co.*, 422 Md. 357, 377, 30 A.3d 854 (2011) (internal quotations omitted) (additional citations omitted) (emphasis added). *See also Jackson v. Dackman Co.*, 181 Md.App. 546, 566, 956 A.2d 861 (2008), *rev'd*, 422 Md. 357, 30 A.3d 854 (2011) ("The 'law of the land' in Article 19 is the same due process of law required by the [F]ourteenth [A]mendment.") (additional citations omitted).

Appellants had the burden of proving that Bank of America was a state actor by demonstrating that its conduct was "fairly attributable" to the state. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Appellants argue that Cts. & Jud. Proc. § 11–603(c) required Bank of America to hold the garnished funds, and because it complied, its actions were clearly chargeable to the state and constituted state action. If we agree with appellants' contentions, then any person or institution that abides by a statute or ordinance are automatically "state actors." We believe that this train of thought is detrimental to our justice system, as persons and institutions may become reluctant to act in accordance with the law. Unlike in *Fuentes*, which involved sheriffs, Bank of America was not a state actor because it did not act on behalf of the state. Furthermore, because Bank of America was complying with judicial process, there was no wrongdoing on its part that would create a remedy for an injury to appellants' property pursuant to Article 19 of the Maryland Declaration.

■ When appellants applied and were accepted for an account, Bank of America provided them with a Deposit Agreement, which provided, in pertinent part:

## Legal Process—Subpoena and Levy

"Legal process" includes a writ of attachment, execution, garnishment....

We may accept and comply with legal process: served in person, by mail, by facsimile transmission, or by other means; or served at locations other than the location where the account, property or records are held. You direct us not to contest the legal process. We may, but are not required to, send notice to you of the legal process. We do not send a notice if we believe the law prohibits us from doing so.

We may hold and turn over funds or other property to the court or creditor as directed by the legal process, subject to our right of setoff and any security interest we have in the funds or other property.

\*    \*    \*

If the legal process requests information about one or more, but not all, account owners or signers, we may release information about all co-owners or signers on the account, even though some of the other co-owners or signers are not covered by the legal process.

\*    \*    \*

We have no liability to you if we accept and comply with legal process as provided in this section or by law.

Although Bank of America may not have provided post-judgment deprivation notification by the means of personal service or service by publication, appellants did have actual notice of the procedure and logistics regarding Bank of America's compliance with a writ of garnishment by the means of the Deposit Agreement.

We surmise that the General Assembly examined and balanced a citizen's due process rights with a creditor's interest. This is evidenced in the change in language of Cts. & Jud. Proc. § 11–603(c). Instead of providing the financial institutions with the option of removing and/or transferring the debtor's monetary property to the court, the General Assem-

bly decided to maintain the assets in the account until the court entered an order, or there was finality concerning the garnishment proceeding. This change assisted in ensuring that a "hold" or "freeze" of an account was not a complete deprivation, but a minor inconvenience.

Furthermore, as stated by the Eighth Circuit, "postponing notice and hearing until attachment has occurred[,] generally serves a creditor's interest in preventing the waste or concealment of a debtor's assets." *Lind*, 688 F.3d at 407–08 (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 608–09, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Brown v. Liberty Loan Corp. of Duval*, 539 F.2d 1355, 1367 (1976)). We agree with the Eighth Circuit, as we perceive that once spouses, family members, and/or significant others are pre-notified of the possibility of an attachment, they would remove not only their monetary property, but possibly the debtor's assets as well. This type of conveyance, in an attempt to defraud the debtor's creditors, is not uncommon as it occurs quite often in family law cases, specifically those involving alimony and child support issues.

The General Assembly did not exercise its police power arbitrarily, but presented a thoughtful enactment of the garnishment statute. As a result, the writ of garnishment was valid and Bank of America properly complied. Accordingly, we conclude that the trial court did not commit a legal error by finding and declaring that Cts. & Jud. Proc. § 11–603(c) did not violate the Due Process Clause of the U.S. Constitution or Article 19 of the Maryland Declaration of Rights.

### III. Whether The Trial Court Committed A Legal Error By Finding And Declaring That Cts. & Jud. Proc. Art. § 11–603(c) Did Not Violate Article 3, Section 43 Of The Maryland Constitution.

Appellants maintain that Cts. & Jud. Proc. § 11–603(c) violates Article 3, Section 43 of the Maryland Constitution, which reads, "[t]he property of the wife shall be protected from the debts of her husband" because it permits the seizure of bank accounts that are held in a tenancy by the

entirety. This type of concurrent ownership interest is described as the following:

> The common-law incidents of estates by the entireties are that the tenants can only be and must be husband and wife; that each spouse is seized of the entire property (which can be real or personal); that each spouse is entitled to the income derived from the property and cannot encumber or dispose of it without the other spouse's consent; and, upon the death of one spouse, the other takes the whole.

*Cruickshank–Wallace v. County Banking and Trust Co.,* 165 Md.App. 300, 311, 885 A.2d 403 (2005) (citing *Arbesman v. Winer,* 298 Md. 282, 288–90, 468 A.2d 633 (1983); *State v. Friedman,* 283 Md. 701, 705–06, 393 A.2d 1356 (1978)). Thereby, a creditor cannot offer a claim on property subject to a tenancy by the entirety. *Id.* at 312, 885 A.2d 403 (additional citations omitted). A tenancy by the entirety and a joint tenancy are generally the same, except the joint tenancy does not require marriage. *Id.* Both tenancies enjoy a "right of survivorship," which means that when a co-owner dies, the remainder interest passes to the surviving owners. *Cooper v. Bikle,* 334 Md. 608, 621–22, 640 A.2d 1120 (1994) (citing Roger A. Cunningham et al., *The Law of Property* § 5.3, at 202 (1984)).

In *Diamond v. Diamond,* 298 Md. 24, 32, 467 A.2d 510 (1983), the Court of Appeals determined whether the plaintiffs, a husband and wife, intended to establish a tenancy by the entirety regarding a settlement check. In *Diamond,* the trial court entered a judgment in favor of the plaintiffs and against a trucking business for approximately $30,000. *Id.* at 26–27, 467 A.2d 510. As a result, the business's insurance company issued a settlement check. *Id.* at 27, 467 A.2d 510. During the interim, and in a separate action, the husband's former wife obtained a judgment against the husband for approximately $29,000. *Id.* at 26, 467 A.2d 510. The trial court held a hearing because the husband's assets were insufficient in paying the former wife's judgment. *Id.* at 27, 467 A.2d 510. During a hearing, the plaintiffs alleged that the settlement check constituted property held in tenancy by the

entireties, but the trial court disagreed, and ordered that the unpaid balance be subtracted from the settlement check. *Id.* Our Court affirmed the trial court's judgment, and the Court of Appeals granted *certiorari. Id.*

The plaintiffs averred that because the settlement check concerned their lawsuit against the trucking company for personal injuries and loss of consortium, then it received protection pursuant to the rule regarding tenancy by the entireties. *Id.* at 28, 467 A.2d 510. Predicated on a similar case, the Court determined that the plaintiffs lacked the intent to create a tenancy by the entirety, and affirmed. *Id.* at 32, 467 A.2d 510.

In *Baker v. Baker,* 123 Md. 32, 36–37, 90 A. 776 (1914), the plaintiffs-children filed a complaint against the defendant-mother to enjoin her from using bank account funds to assist their sister in purchasing ten acres of land. Several years prior, the plaintiffs' father ("father"), who was the defendant's husband, deposited money into a savings account. *Id.* at 34, 90 A. 776. "[H]e wanted it deposited so that if he should die before his wife[,] the money would be hers, and that if she should die first[,] it would belong to him, and the deposit was entered in the books of the bank, and the deposit book given him, to the credit of Mr. and Mrs. George Baker." *Id.* (internal quotations omitted). A few years later, the father withdrew the money, then redeposited it. *Id.* This time, he amended the book entries, denoting a division of the funds amongst his children, grandchildren, and kinship, stating "Mr. and Mrs. George Baker, payable at our death to above children." *Id.* at 34–35, 90 A. 776. After the father died, the defendant attempted to assist one of her children in purchasing land, but the plaintiffs filed a complaint to enjoin her. *Id.* at 36–37, 90 A. 776. The trial court ruled that upon the father's death, the defendant had sole ownership in the account because the father's redeposit was invalid because the defendant had no knowledge of the amendment. *Id.* at 37–38, 90 A. 776.

On appeal, the Court of Appeals determined that despite the lack of "tenancy by the entireties" or "right of survivorship" language, the initial deposit still created a tenancy by the entirety. *Id.* at 40, 90 A. 776. However, upon the defendant's death, the Court noted that although "the words "in trust" were not employed, [ ] the intention to create a trust [was] clearly shown by the evidence in the case." *Id.* at 42, 90 A. 776. Ultimately, the Court affirmed. *Id.* at 43, 90 A. 776.

We do acknowledge that in *Diamond,* 298 Md. at 32, 467 A.2d 510, the Court of Appeals did indicate that courts could presume that the intent to create a tenancy by the entirety may have existed by establishing a bank account. Traditionally, specific language has been utilized in the deposit agreements and/or the signature cards for this to occur. *See Leeds Fed. Sav. and Loan Ass'n v. Metcalf,* 332 Md. 107, 111, 630 A.2d 245 (1993) (stating, "application is hereby made for a savings deposit account in the LEEDS FEDERAL SAVINGS AND LOAN ASSOCIATION, BALTIMORE, MD. in the names of the persons whose signatures ... shown on this card, as **joint tenants, with the right of survivorship** ....") (capitalization in original) (emphasis added); *Hartlove v. Maryland School for the Blind,* 111 Md.App. 310, 322, 681 A.2d 584 (1996) (stating, "[o]ne of the Loyola signature cards stated that there was a 'CONCLUSIVE PRESUMPTION OF CREATING A **JOINT TENANCY** & **TO VEST TITLE TO FUNDS IN SURVIVOR**[ ]' ") (capitalization in original) (emphasis added); *Verzi v. Goldburn,* 26 Md.App. 409, 410, 338 A.2d 416 (1975) ("[B]oth women signed an agreement provided by the bank which stated that "all sums now on deposit or hereafter deposited in our account with the said bank, shall be owned by us **jointly with the right of survivorship and not as tenants in common.**") (emphasis added); *Tyler v. Suburban Trust Co.,* 247 Md. 461, 463–64, 231 A.2d 678 (1967) (The signature cards and agreement indicated that "all sums not on deposit or hereafter deposited by either ... with said bank ... shall be owned by them **jointly and severally with the right of survivorship** ....") (emphasis added).

In the case at bar, the Deposit Agreement stated that, "[a]ll **joint accounts** are presumed to be **joint accounts** with the **right of survivorship** . . . ." (emphasis added). No language in the "account ownership" section of the Deposit Agreement mentioned tenancy by the entireties or "husband and wife." As indicated by *Baker*, a court could presume that a tenancy by the entirety was created. *See Kolker v. Gorn*, 193 Md. 391, 396–97, 67 A.2d 258 (1949) (stating, "[t]here can be no doubt that in Maryland, a conveyance to husband and wife, without restrictive or qualifying words, creates a tenancy by the entiret[y]") (additional citation omitted). However, we agree with the Connecticut Supreme Court's reasoning in *Fleet Bank*, 691 A.2d at 1073, indicating that courts must tread lightly when applying the laws of property to the rules of joint accounts.

As of June 19, 2010, Bank of America used its standard Deposit Agreement in twenty-nine states and the District of Columbia. If Maryland courts were to presume that the Deposit Agreement's language created a tenancy by the entirety, the General Assembly's goal when it enacted Cts. & Jud. Proc. § 11–603(c) would be totally undermined. As previously denoted, in 1991, when the General Assembly was amending the statute, financial institutions pondered whether accounts that spouses shared were protected pursuant to any "safe harbor" provision. SENATE JUDICIAL PROCEED-INGS COMMITTEE, FLOOR REPORT, SB 469, 1991 General Assembly (1991 Md.). Additionally, the financial institutions were concerned about any protection because they, at the time of garnishment, might not have knowledge of whether the account holders were husband and wife. *Id.* As a result, perceiving countless issues regarding enacting a safe harbor provision, the General Assembly decided to permit the financial institutions to maintain the assets in the bank account as opposed to placing them into the court. S.B. 469, 401st Gen. Assem., Reg. Sess. (Md.1991).

Accordingly, we determine that the General Assembly provided a thoughtful solution to the institutions' concerns, and we refrain from interfering to conclude that Cts. & Jud. Proc.

§ 11–603(c) violates Article 3, Section 43 of the Maryland Constitution.

## IV. Whether The Trial Court Committed A Legal Error By Finding And Declaring That Cts. & Jud. Proc. Art. § 11–603(c) Did Not Violate The Expedited Funds Availability Act.[17]

Appellants' arguments were predicated on the constitutionality of Cts. & Jud. Proc. Art. § 11–603(c), stating that they concurred with the trial court that the Expedited Funds Availability Act "permits a bank to hold a customer's funds if they are being held to satisfy that customer's obligations," however, the court erred because Lavelle's account was not jointly owned and Dorothy and Michael's accounts were marital property.  As we previously indicated, Bank of America properly complied with the law in holding appellants' accounts were jointly owned and was not protected by a "marital property" exception.  Furthermore, as the trial court indicated, "[a] bank does not violate its obligations under [12 U.S.C. § 4002] by holding funds to satisfy a garnishment, tax levy, or court order restricting disbursements from the account...." 12 C.F.R. Part 229, Appendix E (commentary on § 229.2(d)). Accordingly, we conclude that the trial court did not err in finding and declaring that Cts. & Jud. Proc. Art. § 11–603 did not violate the Expedited Funds Availability Act.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED.  COSTS TO BE PAID BY APPELLANTS.**

---

17.  12 U.S.C. § 4002(a) provides, in pertinent part:
(a) Next business day availability for certain deposits
(1) Cash deposits; wire transfers
Except as provided in subsection (e) of this section and in section 4003 of this title, in any case in which—
(A) any cash is deposited in an account at a receiving depository institution staffed by individuals employed by such institution; or
(B) funds are received by a depository institution by wire transfer for deposit in an account at such institution,
such cash or funds shall be available for withdrawal not later than the business day after the business day on which such cash is deposited or such funds are received for deposit.